UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JONESE JACKSON, KELVIN CHAPLIN, and
VENTRICE BROWN,

    Plaintiffs,

v.                                              CASE NO: 8:10-cv-1483-T-26TBM

CHECKERS DRIVE-IN RESTAURANTS, INC.,

    Defendant.
_____/

**O R D E R**

Before the Court are three motions for summary judgment filed by the Defendant against each of the respective Plaintiffs, Defendant's Undisputed Statement of Facts, Plaintiffs' Consolidated Response in Opposition, Plaintiffs' Statement of Undisputed Facts, and voluminous depositions excerpts, affidavits, exhibits, and other submissions. (Dkts. 23, 25, 26, 27, 34, 35, 36, 37 & 38). After careful consideration of the submissions of the parties, the applicable law, and the entire file, the Court concludes that the motions should be denied.

**BACKGROUND**

This race-based job discrimination case, filed pursuant to 42 U.S.C. § 1981, involves a Checkers Drive-In located on Davis Highway in Pensacola, Florida. All three Plaintiffs worked at this particular Checkers as "crew" members. All three Plaintiffs are black. One of the general managers over the crew of the store was Carnita Washington, a

black woman, who has filed a suit against Checkers,[1] and left Checkers in early October 2008. Another general manager, Carolyn Munhollon, a white woman, was hired in March 2009 and left in September 2009. Richard Forman, who is white, served as a general manager for the Davis Highway store on and off for about three years, ending in 2010. Forman replaced Munhollon after she was fired.[2] The general managers report to the district manager, Kevin Jones, who is white and the alleged perpetrator of the racial discrimination. Other individuals holding corporate positions at Checkers include: Wendy Harkness, the Vice President of Human Resources; Marc Mediate, the Vice President of Company Operations; J.P. Morgan, the Director of Employee Relations; and Bob Wright, the Vice President.

Although former General Manager Washington left Checkers in October 2008, all three Plaintiffs were aware at the time of their terminations in 2009 that Washington claims that Jones called her the "n-word" on more than one occasion. All three Plaintiffs contend that in March 2009, General Manager Jones had issued a mandate to Munhollon to hire more white people. One week later Jones questioned Munhollon about her progress with hiring more white people, afterwards which she hired two white people. In

---

[1] See Washington v. Checkers Drive-in Restaurants, Inc., 3:09-cv-316-MCR/CJK, pending in the Northern District of Florida, Pensacola Division.

[2] Munhollon testified at deposition that she has sued Kevin Jones for an unpaid cell phone bill, and filed a charge of sexual harassment against Checkers.

April or May 2009, Jones pushed Munhollon to fire Jackson, Brown, and another black employee. Jones had a "hit list" of employees to fire, which consisted of only blacks.

Plaintiff Jonese Jackson worked intermittently for Checkers for several years. Upon her rehire in December 2007, she worked for approximately nineteen months until she was terminated in July 2009. During this time, she worked under three different supervisors, two of whom were General Manager Forman and General Manager Munhollon. Her hours were reduced significantly in March and April 2009. The reduction occurred after she accused the shift manager of stealing in April 2009, and her schedule had to be rearranged to avoid working at the same time as the shift manager. Jackson called the corporate office to report the shift manager.

A few months after her hours were reduced, Jackson was fired for "no call, no show" in July 2009. Jackson contends that she did call in and spoke to a crew member who relayed the message to the shift manager. The next day when she reported to work, Kevin Jones instructed Munhollon to fire her, which Munhollon did, although she believed it was not warranted. Jackson called the corporate office to complain after she was terminated. Jackson was replaced by a black woman.

Kelvin Chaplin was hired at various times with the most recent on June 28, 2008. Although Chaplin had no history of insubordination, on March 24, 2009, he was terminated for banging on a grill with a spatula after he was threatened with termination if he was late again. Chaplin denies that he made a loud noise with the spatula, and even if

he did, he claims that he was simply doing his job of cleaning the grill. After he was fired, he attempted to return to the store and saw a white male employee performing his job. Checkers contends a black male replaced him.

Ventrice Brown, a black female, began working at the Checkers on Davis Highway in February 2009. Although Brown often missed work, she was never reprimanded according to General Manager Forman. On September 16, 2009, she was terminated for job abandonment. She had called in two days before to report that she would not be going to work because her husband was hospitalized. She testified that Forman told her to bring a physician's note when she returned to work. On the third day, she came to work with a doctor's note; however, she was terminated. The company's records show that her replacement was white.

## ANALYSIS

At the outset, Plaintiffs concede that there is no direct evidence of discrimination in this case. Specifically, none of the Plaintiffs in this case ever heard Kevin Jones, or anyone else, use derogatory and discriminatory language in their presence. The Plaintiffs, therefore, relying on circumstantial evidence alone, must show a *prima facie* case of discrimination to trigger the balancing or burden-shifting required by McDonnell Douglas.[3] The McDonnell Douglas framework encompasses three steps with the first

---

[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973) (espousing the three-step burden-shifting framework); see also Smith v. Lockheed-Martin Corp., ___ F.3d ___, 2011 WL 2567777, at *2 (11th Cir.

step articulating the four requirements of the *prima facie* case. For racially motivated discharge, the plaintiffs must show the following: (1) that they are members of the protected class; (2) that they were qualified for the jobs; (3) that they were terminated from those jobs; and (4) that they were treated less favorably than a similarly situated individual outside their protected class. Smith v. Lockheed-Martin Corp., ___ F.3d ___, 2011 WL 2567777, at *2 (11th Cir. 2011) (citing Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003)). If the Plaintiffs show these four factors, then a presumption is raised that race motivated their employer to treat them unfavorably. Id. at *2. It is at this time that the burden shifts to the employer to rebut the presumption by "producing evidence that [the employer's] action was taken for some legitimate, non-discriminatory reason." Id. at *2 (quoting EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002)). The burden is one of production of evidence, and if the employer meets its burden, then the presumption of discrimination is rebutted and disappears. Id. at *2.

At the next, more specific level, the plaintiff must show that the employer's proffered reason is a pretext for unlawful discrimination. Id. at *3. At this point the plaintiff's burden "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Id., at *3 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d

---

2011). "Title VII and § 1981 have the same requirements of proof and utilize the same analytical framework. [citation omitted]" Smith, 2011 WL 2567777, at *2 n. 14.

207 (1981)). If a jury could infer that the employer's justification is pretextual, then considering the evidence in the light most favorable to the plaintiff, the question becomes whether the evidence supports the reasonable inference of discrimination. Id. at *3. If such an inference exists, then summary judgment may not be granted. Id. at *3. In the words of the Smith Court, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. at *4.

In Smith, there were no similar comparators and, as such, the plaintiff failed to establish one of the four factors of the test for a *prima facie* case. Smith confirmed, however, that the failure of a plaintiff to meet all four factors of the *prima facie* case does not doom his case on summary judgment. As long as the record contains sufficient circumstantial evidence to create a triable issue of fact as to whether Checkers fired the Plaintiffs because they were black, then the Plaintiffs need not prove each and every element of a *prima facie* case on summary judgment.

Turning to the case at hand, the Plaintiffs cannot unequivocally establish all four factors of the test for a *prima facie* case. Not all of the alleged comparators are perfect fits or even proven to be a member of a class outside the Plaintiffs', and Defendant argues that not all of the Plaintiffs were qualified for the their jobs as crew members. Chaplin was replaced by another black male, Marcus Myles. Defendant argues that Chaplin was not qualified for his position because he was not meeting Checkers' expectations of an

employee at the time of his termination, citing <u>Holifield v. Reno</u>, 115 F.3d 1555, 1565 n. 7 (11th Cir. 1997).  The Court notes, however, that whether an employee is deemed qualified for purposes of the *prima facie* case is not necessarily limited to the moment in time of the termination, but rather an inference of qualification may arise depending on the employee's prior work experience as well as other objective evidence gleaned from the present job.  See <u>Brockman v. Avaya, Inc.</u>, 545 F.Supp.2d 1248, 1253-54 (M.D. Fla. 2008).  In Chaplin's case, although he may have been tardy to work on occasion, there is no evidence that he was ever insubordinate or that he ever abused company property.  Chaplin's work history at Checkers reveals that he performed an overall "good job."

With respect to Jackson's qualifications, her work history reveals receipt of at least one raise during her tenure at Checkers.  While Jackson had been warned about a prior problem with a "no-call, no-show" violation, the day she was fired for "no-call, no-show," she testified that she did call in, but her shift manager was not there.  Jones then directed Munhollon to terminate Jackson despite the failure to follow Checkers' protocol of progressive disciplinary action.

Brown's work history at Checkers shows that when she was at work, she performed her job well.  Although she sometimes missed work, she was always considered at least an average employee.  On the day she was terminated, she showed up with the doctor's note that Forman had asked her to bring in when she returned to work

on the third day after her husband's illness.[4]  Viewing these facts in the light most favorable to Brown, she believed she had complied with the request for written proof of her absence.

Having determined that even though the Plaintiffs may not have technically met all four factors for the *prima facie* case, the Court finds that, as in Smith, the Plaintiffs survive summary judgment because they have presented circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.  While Defendant urges that Kevin Jones used a "fear-based management style with all employees, regardless of race[,]" circumstantial evidence exists sufficient to create a triable issue that he treated blacks less favorably than others and thus, his reasons, and perhaps even Forman's reasons, for termination of all three Plaintiffs were pretextual.  Chaplin's immediate termination for abusing the grill may be determined by a jury to be racially motivated as opposed to a genuine reaction to perceived circumstances.  The circumstances surrounding Jackson's termination based on "no-call, no-show" leave unanswered questions concerning why Jones decided not to follow company protocol, but instead, direct Munhollon to fire her immediately.  Brown's termination for absence on the job might also be explained by a discriminatory intent, if you believe Brown's version of the three days leading up to her termination.

---

[4]  Forman does not agree with Brown's version of the facts, but, for purposes of this summary judgment, the Court must view the facts in the light most favorable to the Plaintiffs.

Finally, Plaintiffs' claims for compensatory and punitive damages are best left for consideration at the trial of this case, where the issues of causation and good faith may be examined on a more fully developed record. With respect to the claim for punitive damages, however, the Plaintiffs should take note that the record reveals that Checkers had written policies in place prohibiting unlawful discrimination and procedures for their reporting, which not all of the Plaintiffs did. See Kolstad v. American Dental Ass'n, 527 U.S. 526, 544, 119 S.Ct. 2118, 2129, 144 L.Ed,2d 494 (1999) (noting that "[w]here an employer has undertaken such good faith efforts at Title VII compliance, it 'demonstrat[es] that it never acted in reckless disregard of federally protected rights.'" [citation omitted]).

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)   Defendant's Motion for Summary Judgment Against Kelvin Chaplin (Dkt. 25) is **DENIED.**

(2)   Defendant's Motion for Summary Judgment Against Jonese Jackson (Dkt. 26) is **DENIED.**

(3)   Defendant's Motion for Summary Judgment Against Ventrice Brown (Dkt. 27) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on July 27, 2011.

                s/*Richard A. Lazzara*
                **RICHARD A. LAZZARA**
                **UNITED STATES DISTRICT JUDGE**

<u>COPIES FURNISHED TO</u>:  Counsel of Record